**MISSOURI STATE DIVISION OF FAMILY SERVICES, Appellant,**

v.

**In re Betty BARCLAY, Respondent.**

**No. WD 36531.**

Missouri Court of Appeals, Western District.

Dec. 17, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Jan. 28, 1986.

Application to Transfer Denied March 25, 1986.

Mark W. Kiesewetter Jefferson City, for appellant.

Edward Berg, Columbia, for respondent.

Before SHANGLER, P.J., and TURNAGE and BERREY, JJ.

BERREY, Judge.

The Missouri State Division of Family Services (DFS) appeals the reversal of the decision of the director of DFS which limited Betty Barclay's personal needs allowance to $25.

The following narrative will assist in understanding the issues herein.

Betty Barclay, the respondent, is a deaf mute who suffers from many medical impairments. She lived with her grandmother for some period of time. After the death of her grandmother, the respondent became a resident at the Riverside Nursing Home in Mokane, Missouri, where she currently resides.

Up until 1980, her grandmother's estate provided the necessary funds for her care. At that time the funds were exhausted and the Probate Court of Callaway County found respondent to be incompetent. The probate court appointed Mr. A.B. Musik, the public administrator of Callaway County, Fulton, Missouri, as her legal guardian.

Mr. Musik obtained $353.60 in social security benefits[1] for the respondent. He also procured Medicaid funds through DFS to pay for her care at the Riverside Nursing Home. Expenses incurred which were not covered by Medicaid were paid by Mr. Musik out of a $1,000 burial fund. These funds, however, were depleted in 1982.

---

1. The parties in their briefs have used the term "social security benefits" loosely. Because the facts on the record were not fully developed, it is unclear whether the "payment from social security" found its origin in Title II codified at 42 U.S.C. § 401 et seq. as benefits paid to retired or disabled individuals and their survivors and dependents, or in Title XVI codified at 42 U.S.C. § 1381 et seq. as a benefit to needy individuals who are aged, blind or disabled. For purposes of this opinion, this court assumes after examining the complete record the payments were made under Title XVI.

On November 1, 1982, Mr. Musik petitioned the probate court to allow him to withhold and set aside a portion of the respondent's monthly social security benefits to pay certain expenditures. The court ordered the guardian to withhold the following amounts from respondent's monthly income:

| | | |
|---|---|---|
| 1. | Court costs | $ 2.08 |
| 2. | Guardian's commission | 16.50 |
| 3. | Attorney fees | 3.42 |
| 4. | Medication costs | 30.00 |
| 5. | Clothing & personal needs | 30.00 |
| | | $82.00 |

On January 10, 1984, the DFS determined that the only allowable deductions were $25 for respondent's personal needs and $14.60 for the Medicare insurance premium, an amount deducted by social security upon issuance of her monthly social security check. The remaining balance of $314 was to be paid to the nursing home. This figure was calculated by a method set forth in the Missouri Division of Family Services Income Maintenance Manual, Chapter VI, Section IV, pages 24–30 (also referred to herein as IMM).

Following an evidentiary hearing the director of DFS decided on March 8, 1984, that the deductions totaling $39.60 and the remaining balance of $314 were correctly determined pursuant to 42 C.F.R. § 435.733 and the DFS's Income Maintenance Manual.

However, Mr. Musik relied on the probate court order and retained the $82 from the monthly social security checks. He has paid $254 per month to the nursing home and has been billed the difference. He appealed the director's decision to the Circuit Court of Callaway County, which reversed the director.

■ DFS challenges the circuit court's reversal of the decision of the director of DFS on the grounds that the court ordinarily plays a limited role in reviewing the decisions of an administrative body. Generally, where there is an application of law to facts, the issue for the court becomes whether or not there is competent and substantial evidence upon the record as a whole to support the administrative decision. *Holt v. Personnel Advisory Board,* 679 S.W.2d 340, 342–343 (Mo.App.1984).

■ The issues in the instant case, however, do not involve an examination of the facts. Here, the resolution of the issues turns on the validity of DFS's Income Maintenance Manual and the interpretation of Federal Medicaid statutes. If an administrative agency's decision is based upon its interpretation or application of the law, then the matter is for the independent judgment of the reviewing court. *King v. Laclede Gas Co.,* 648 S.W.2d 113, 114 (Mo. banc 1983); *Daily Record Co. v. James,* 629 S.W.2d 348, 351 (Mo. banc 1982); *St. Louis County v. State Tax Commission,* 562 S.W.2d 334, 337–338 (Mo. banc 1978).

In an attempt to untangle these issues, this court must examine whether the DFS' Income Maintenance Manual (IMM) provides a permissible means to carry out agency policy affecting the legal rights of persons like the respondent. The IMM is a voluminous compilation of materials and guidelines used by DFS. Although the IMM incorporates portions of the Code of State Regulations at 13 C.S.R. 40 et seq., the provisions of IMM in Chapter VI, Section IV, page 20, item b, are the only agency policy at issue in this case; these provisions are not contained in the state code or on file with the Secretary of State.

In *Page Western v. Community Fire Protection,* 636 S.W.2d 65, 68 (Mo. banc 1982), the Supreme Court stated that "[r]ules duly promulgated pursuant to properly delegated authority have the force and effect of law." The legislature in § 207.020, RSMo 1978 has granted DFS the authority to issue the necessary rules and regulations.

■ The next question becomes whether the IMM, Chapter VI, § VI, page 20, which "sets forth the method by which the Agency is required to use to compute the amount of a recipient's income to be paid the nursing home" is within the definition of a "rule" according to § 536.010.4, RSMo

1978, or if it comes within an exception thereunder. Section 536.010.4 describes the term "rule" as "each agency statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure or practice requirements of any agency." The method to determine a recipient's allocation of income is a rule within this definition as it "substantially affects the legal rights of" persons who seek financial aid through the state's Medicaid program.

Further examination of § 536.010.4 reveals the DFS' provisions cannot find refuge within the exceptions to the definition. *Cf. McCallister v. Priest,* 422 S.W.2d 650, 659 (Mo. banc 1968) (internal management rules set forth in a police manual were determined to be within the listed exceptions under § 536.010.4). It may be asserted that the portions of IMM in issue come within the exception which states "those portions of staff manuals, instructions or other statements issued by an agency which set forth criteria or guidelines to be used by its staff in auditing ..." § 536.-010.4(f). The provisions in IMM, however, do not merely involve the verification of a person's financial accounts. These provisions establish a methodology to be used in determining an individual's income allocation.

■ An agency, like DFS, who desires its rules to possess effective legal force, must satisfy publication and filing requirements. *Tonnar v. Missouri State Highway and Transportation Commission,* 640 S.W.2d 527, 532 (Mo.App.1982). The procedure for administrative agency rule making is set forth in § 207.021, RSMo 1978.[2] Although several courts have found it "unnecessary to determine whether ... the manual [IMM] had any effect as 'an authority definition or expression of agency policy' or rose to the dignity of a regulation" *Pummill v. Missouri Division of Family Services,* 674 S.W.2d 647, 650 (Mo. App.1984) and cases cited therein, this

court finds, in the instant case, the asserted portion of IMM has no controlling force due to the noncompliance with the required procedures.

■ Assuming arguendo that the provisions had effective legal force, the director's decision to limit the deductions to $25 from Betty's social security check is contrary to law in view of the Medicaid statutes and accompanying regulations.

The purpose of the Medicaid program, as enacted in 1965, is to provide medical assistance to needy persons whose income and resources are insufficient to meet the expenses of health care. 42 U.S.C. § 1396. Under this program, the states and the federal government engage in "cooperative federalism": "'the federal government provides matching funds to ... states which ... locally administer their own programs and transmit payments to providers of nursing home services.'" *Department of Social Services v. Villa Capri Homes, Inc.,* 684 S.W.2d 327, 330 (Mo. banc 1985). Citing *AGI–Bloomfield Convalescent Center, Inc. v. Toan,* 679 S.W.2d 294, 298 (Mo.App.1984).

While a state may refuse to participate in this program, once a state has elected to accept substantial federal funds, it must comply with all federal statutes and regulations in the administration of its program. *Harris v. McRae,* 448 U.S. 297, 301, 308, 100 S.Ct. 2671, 2680, 2683, 65 L.Ed.2d 784 (1980); *see also, King v. Smith,* 392 U.S. 309, 333, 88 S.Ct. 2128, 2141, 20 L.Ed.2d 1118 (1968). Although a state may design a plan to meet the needs and conditions of the state, it still must operate within the framework laid out by the federal government. *District of Columbia Podiatry Society v. District of Columbia,* 407 F.Supp 1259, 1264 (D.D.C.1975). By Missouri's decision to participate in the Medicaid assistance program in 1967, it became subject to those conditions. *Villa Capri Homes, supra,* at 330.

---

**2.** Section 207.021, RSMo Supp.1978 is entitled "Rules and regulations, suspension and reinstatement procedure" for the Division of Family

Services. The text of this section does not deal with the procedure for the promulgation of a rule.

The federal regulation at issue directs that a state agency must reduce its payment to an institution because certain deductions must be allowed to the individual. 42 C.F.R. § 435.725.[3] Specifically, § 435.-725(c) states:

In reducing its payment to the institution, the agency must deduct the following amounts in the following order, from the individual's total income including amounts disregarded in determining eligibility:

(1) A personal needs allowance that is reasonable in amount for clothing and other personal needs of the individual while in the institution. *This protected personal needs allowance must be at least—*

(i) *$25 a month for an aged, blind or disabled individual,* including a child applying for Medicaid on the basis of blindness or disability; ...

(4) *Amounts for incurred expenses for medical or remedial care that are not subject to payment by a third party, including—*

(i) Medicare and other health insurance premiums, deductibles or coinsurance charges; and

(ii) *Necessary medical or remedial care recognized under State law but not covered under the State's Medicaid plan, subject to reasonable limits the agency may establish on amounts of these expenses.*

Appellant states the DFS's Income Maintenance Manual (IMM) is in compliance with the federal regulations because it satisfies the minimum deduction requirement of $25 for a recipient's personal needs allowance. Assuming for the moment the IMM has been properly adopted by the agency and has legal effect, this minimum monthly allowance satisfies the federal requirement of "at least—$25 a month for an aged, blind or disabled individual."

It would be utopia if the personal needs allowance of each state could be tailored to fit each recipient's demands without financial limitation. Regrettably, it is not possible and a maximum amount must be set by the state. As long as the state's deduction for personal needs allowance does not drop below the federal minimum guideline of $25, there has been proper compliance with the federal Medicaid framework. The IMM, however, is not entirely congruous with the federal framework.

Section 435.725(c)(4) above specifically allows for deductions associated with necessary medical or remedial care recognized under state law which has not been provided by the state medicaid program.

In *Potter v. James,* 499 F.Supp 607 (N.D. Ala.1980), the court struck down an Alabama statute which would have required medicaid recipients to pay part of their prescription drug expense out of their $25 personal allowance. The *Potter* court stated, "the proposed action of the defendants [proponents of the Alabama statute] to re-

**3.** Section 435.725 is entitled "Post eligibility treatment of income and resources of institutionalized individuals: Application of patient income to the cost of care." This section applies when the state agency provides Medicaid funds to recipients of supplemental security income (SSI) who are determined to be "categorically needy" individuals. *See* 42 C.F.R. §§ 435.700 and 435.721. The catergorically needy are the aged, blind and disabled whose personal income is low enough to qualify under the SSI program. 42 C.F.R. § 435.4; *Friedman v. Berger,* 547 F.2d 724, 726 (2nd Cir.1976). Respondent refers to 42 C.F.R. § 435.832 which enjoys the same title; however, this section is applicable to the "medically needy" which encompasses only those Medicaid recipients whose income is too high to qualify them for the SSI but is too low to meet their medical expenses 42 C.F.R. §§ 435.800 et

seq. and 435.3; *Friedman, supra,* at 726. The instant case falls within the former category. The director of DFS in his decision and order relied on 42 C.F.R. § 425.733 which is also entitled the same as § 425.725. This section is applicable when a state uses more restrictive eligibility requirements than those required for SSI when an individual is categorically needy. 42 C.F.R. § 435.731. Analysis of Missouri's program found at § 208.100 et seq. RSMo 1978 and RSMo Supp.1984 and 13 C.S.R. § 40.2.010 et seq., reveals the eligibility requirements to be no more restrictive than those set forth under the federal supplemental security income programs. *See* 20 C.F.R. § 416 et seq. It is only an academic exercise, however, to distinguish the applicability of each of these regulations as they contain identical provisions.

quire nursing home recipients to invade the minimum monthly allowance of $25 to pay any part of the cost of prescription drugs is in violation of federal regulations, and Alabama may not, consistent with the federal requirements, invade the "personal needs" allowance of nursing home patients to pay part of the cost of their prescription drugs." *Id.* at 611.

Similarly, by DFS disallowing a separate deduction for appellant's medicines, her personal needs allowance is depleted in violation of the federal regulations. The personal needs allowance was created to cover "clothing and other personal needs" and not for the "treatment of a patient's illness." *Id.* at 611.

The court in *Potter, supra,* relied in part on the analysis in *Friedman v. Berger, supra,* which acknowledged that the preservation of the full $25 allowance is critical. The *Friedman* court noted, "[t]hat Congress considered the $25 basic SSI cash payment at least minimally adequate for the personal needs of institutionalized persons is apparent from the very fact this is the only amount available to the most needy persons who are lacking any outside income." *Id.* at 731.

The *Friedman* court quoted House Report No. 231, 92nd Cong.2d Sess (1971) in which Congress observed that institutions, hospitals and nursing homes do not always supply small comfort items and that therefore the residents need a small monthly allowance. *Id.* at 731. The court made further reference to Senate Report No. 404, 89th Cong. 1st. Session (1965):

> The State may require the use of all the excess income of the individual toward his medical expenses, or some proportion of that amount. In no event, however, ... may a State require the use of income or resources which would reduce the individual below the level determined by the State as necessary for his maintenance.

*Id.* at 731; *Potter, supra,* at 612–613.

Additionally, the decision to limit deductions to $25 has the effect of diminishing the personal needs allowance to defray court costs and guardian attorney fees. These expenses are all necessary for the care and protection of an individual such as appellant. The Missouri legislature has set forth in Chapter 475 a complete system to accomplish that purpose, the safeguarding of a protectee, which is carried out through the probate division of the circuit court. Costs will naturally be incurred to keep the system functioning. Sections 475.211 and 475.213, RSMo Supp.1984, classifies the claims or expenses and determines the priority of payment. These statutes are examples of the state laws which are not covered in a state's medicaid program but which are necessary to the "remedial" care of an individual § 435.725(c)(4). Furthermore, these expenses were incurred to generate a fund: the necessary monies for appellant's medical care.

The deductions for necessary medical or remedial care are subject to reasonable limits established by the state agency. However, in the instant case, the IMM made no provisions for the deductions nor framed any guidelines for the reasonableness of the allowances and the director of DFS refused any deduction beyond the $25 personal needs allowance.

The cause is remanded to DFS for determination of a reasonable allowance for the cost of the necessary medical and remedial care over and above the $25 personal needs allowance provided by law of Betty Barclay; and in that determination respectful consideration is due the probate court judgment.

All concur.