STATE of Missouri ex rel. Paul E. BARNETT, Respondent,

v.

MISSOURI STATE LOTTERY COMMISSION, Appellant.

No. WD 65788.

Missouri Court of Appeals,
Western District.

July 18, 2006.

Jeremiah W. (Jay) Nixon, Atty. Gen., Sarah E. Ledgerwood, Office of Attorney General, Jefferson City, for appellant.

Tina Marie Crow Halcomb, Jefferson City, for respondent.

PAUL M. SPINDEN, Judge.

The State Lottery Commission appeals the circuit court's judgment ordering it to pay $100,000 to Paul E. Barnett, holder of a winning Powerball lottery ticket. The commission refused to pay Barnett for the ticket because he did not present it within a 180–day deadline that the commission contends was in effect and was declared on the ticket's backside. We disagree with the commission's contention that it was bound by a 180–day deadline and affirm the circuit court's judgment.

We handed down our opinion in this case on May 12, 2006. Because the commission averred that it had promulgated a regulation setting a deadline for claiming a lottery prize that we did not consider, we granted the commission's motion for rehearing and issue this opinion.

Barnett purchased the ticket on December 21, 2002. The ticket's backside said, "IMPORTANT: This ticket is valid only for the dates shown. Winners must claim prizes within 180 days of the winning draw date." Barnett waited 315 days to present his winning ticket for payment on November 1, 2003. He had put the ticket in his pickup's console and did not check on whether it was a winner until October 2003 or earlier.

After the commission denied his claim, Barnett sued the commission.[1] He asked the circuit court to issue a writ of *mandamus* ordering the commission to pay him for the ticket, and he asserted claims for breach of contract, due process and equal protection violations, open records viola-

---

1. Barnett also filed suit against Mitchell Geisler, Barbara Pickering, Sue Terry, Sherri Robins, and Kenneth Hensley in their official capacities, against James R. Scroggins individually and in his official capacity, and against Jacqueline White, Commissioner of Administration, in her official capacity.

tions, and declaratory judgment regarding the validity of a Missouri lottery regulation. The circuit court ordered the commission to pay $100,000 to Barnett. It dismissed all of his other claims.

In reviewing the commission's appeal, we must affirm the circuit court's judgment unless it is not supported by substantial evidence, is against the weight of evidence, erroneously declares the law, or erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The commission contends that the circuit court's judgment is not supported by substantial evidence, is against the weight of evidence, and erroneously declares or applies the law.

■ It first contends that paying Barnett for the ticket violates a 180–day deadline established by Section 313.300, RSMo Supp.2005. The statute says:

1. Unclaimed prize money shall be retained by the commission for the person entitled thereto for one hundred eighty days after the time at which the prize was awarded. If no claim is made for the prize within one hundred eighty days, the prize money shall be reverted to the state lottery fund.[2]

2. In fiscal year 2003, the lottery commission shall transfer the amount received pursuant to this section to the lottery proceeds fund.[3] In fiscal year 2003, the commissioner of administration shall transfer an equivalent amount from the lottery proceeds fund to the schools of the future fund created in section 163.005, RSMo.[4]

■ In reading the General Assembly's statutes, we glean the legislature's intent from the plain and ordinary meaning of the statute's words. *Lincoln Industrial, Inc. v. Director of Revenue*, 51 S.W.3d 462, 465 (Mo. banc 2001). "Effect must be given to the legislative intent from what the legislature said and not from what the legislature may have intended to say or inadvertently failed to say." *Missouri Division of Employment Security v. Labor and Industrial Relations Commission of Missouri*, 637 S.W.2d 315, 318 (Mo. App.1982). The Supreme Court instructed long ago concerning statutory interpretation that "[p]rovisions not found plainly written or *necessarily* implied from what is written will not be imparted or interpolated therein[.] . . . We are guided by what the legislature says, and not by what we may think it meant to say." *Missouri Public Service Co. v. Platte–Clay Elec. Co-op., Inc.*, 407 S.W.2d 883, 891 (Mo.1966) (emphasis added) (citations and quotations omitted).

The General Assembly says nothing in Section 313.300 about deadlines for ticket holders to claim lottery prizes. The statute is not worded in terms of when a prize must be claimed. It mandates only how

---

**2.** Before June 19, 2002, Section 313.300.1 said that unclaimed prize money would be retained by the commission for one year, after which time, the money would revert to the State Lottery Fund.

**3.** The Constitution authorized creation of the Lottery Proceeds Fund in Article III, Section 39(b).3: "Beginning [on] July 1, 1993, monies representing net proceeds after payment of prizes and administrative expenses shall be transferred by appropriation to the 'Lottery Proceeds Fund' which is hereby created within the state treasury and such monies in the lottery proceeds fund shall be appropriated solely for public institutions of elementary, secondary and higher education."

**4.** The Constitution of Missouri established the State Lottery Fund in Article III, Section 39(b).2 which says, "The money received by the Missouri State lottery commission from the sale of Missouri lottery tickets, and from all other sources, shall be deposited in the 'State Lottery Fund,' which is hereby created in the state treasury."

long the commission can retain unclaimed prizes before the money reverts to the State Lottery Fund.

The commission argues that reversion of the unclaimed prize money to the State Lottery Fund necessarily implies a deadline because it loses control of the funds by virtue of Section 313.300.2's requirements. This statute requires the commission to transfer unclaimed prize money to the Lottery Proceeds Fund and the commissioner of administration, in turn, to transfer the funds to the Schools of the Future Fund. But, by its specific terms, Section 313.300.2 applied only to Fiscal Year 2003. The statute does not direct the commission to transfer these funds for any years after Fiscal Year 2003. As the commission notes on its Internet web site, in apparent contradiction of its argument to this court, the transfer to the Schools of the Future Fund during Fiscal Year 2003 was a "one-time appropriation."[5]

Moreover, the General Assembly made clear in Section 313.321.3, RSMo 2000, that it did not intend for Section 313.300 to create a 180–day deadline for claiming prizes. Section 313.321.3 says:

> The "Missouri State Lottery Imprest Prize Fund" is hereby created.... The commission may write checks and disburse moneys from this fund for the payment of lottery prizes only and for no other purpose. All expenditures shall be made in accordance with rules and regulations established by the office of administration. Prize payments may also be made from the state lottery fund.

The commission perhaps would have a strong argument for its position were it not authorized to pay prizes when the money reverted after 180 days from the Imprest Prize Fund to the State Lottery Fund, but this is not the case. Even after the reversion, Section 313.321.3 expressly authorizes it to pay prizes from the State Lottery Fund. Section 313.321.3 makes clear that the General Assembly did not intend for Section 313.300.1 to create a deadline for claiming prizes.

Moreover, contrary to the commission's assertions, it obviously did not believe that Section 313.300.1 required it to make payment of lottery prizes within 180 days after the winning draw date. After the General Assembly amended Section 313.300, the commission continued to pay prizes beyond 180 days after the draw date so long as the ticket holder held a ticket printed on paper that declared a one-year deadline for claiming a prize. The commission argued that this was a matter of pragmatics: Changing the paper on which tickets were printed throughout the state to coincide with the effective date of Section 313.300's amendment would be too onerous. Hence, for some period it ignored its own policy concerning a 180–day deadline, so long as the winning ticket was printed on paper declaring a one-year deadline.[6]

■ "The interpretation and construction of a statute by an agency charged with its administration is entitled to great weight." *Foremost–McKesson, Inc. v. Davis*, 488 S.W.2d 193, 197 (Mo. banc 1972). The commission asserts that it adopted its policy to continue paying tickets that declared a one-year deadline on their backside after the legislature amended Section 313.300 pursuant to 12 CSR 40–85.030(1)(K). This regulation allows the

---

5. *See* http://www.molottery.com/learnaboutus/wherethemoneygoes/fy03_proceeds.pdf.

6. The commission honored a winning ticket that had the one-year deadline printed on its

backside so long as it was post-marked or presented within 365 days of the date of the drawing.

commission's executive director to permit exceptions to the ticket validation criteria. If, however, Section 313.300 truly sets forth a 180–day statutory deadline for payment of lottery prizes, the commission had no authority—for pragmatic reasons or otherwise—to modify the statute and to allow exceptions. *State ex rel. Springfield Warehouse and Transfer Company v. Public Service Commission*, 240 Mo.App. 1147, 225 S.W.2d 792, 794 (1949); *see also Teague v. Missouri Gaming Commission*, 127 S.W.3d 679, 687 (Mo.App.2003).

The commission's actions speak louder than its words. Not only do we find no mandate for a "hard and fast" 180–day deadline for claiming a lottery prize in Section 313.300, the commission obviously did not either.

■ Alternatively, the commission asserts that Barnett is not entitled to payment because regulations promulgated by the commission and its internal procedures required Barnett to claim his prize within 180 days. We disagree.

Section 313.220.1, RSMo Supp.2005, orders the commission to "promulgate such rules and regulations governing the establishment and operation of a state lottery as it deems necessary and desirable to fully implement the mandate of the people expressed in the approval of the lottery amendment to article III of the Missouri Constitution." Moreover, Section 313.230(1)(e), RSMo 2000, mandates that the commission "shall ... [i]ssue rules and regulations concerning the operation of the Missouri state lottery. The rules and regulations shall include, but shall not be limited to, ... [t]he manner of payment of prizes to the holders of winning tickets or shares[.]" Pursuant to this authority, the commission promulgated 12 CSR 40–85.030(1)(F), which requires that a valid winning ticket be "validated in accordance with procedures for claiming and payment of prizes[.]" Furthermore, 12 CSR 40–60.030(3) directs the commission's director to "place detailed rules for claiming prizes in brochures to be made generally available to the public and so much as may be practicable on the reverse side of instant game tickets."

When the General Assembly amended Section 313.300 to require for reversion of unclaimed prize money to the State Lottery Fund within 180–days rather than one year, the commission issued new pre-printed ticket paper to retailers with pre-printed language on the tickets' backsides [7] stating that players had 180 days from the draw date in which to redeem any possible prizes.[8] Although the commission relies

**7.** The commission also advised players and retailers of the change through publications, press releases, and by posting the information on its Internet web site.

**8.** The language on the tickets' backsides said, "TO CLAIM YOUR PRIZE: Present this ticket to any jackpot/daily Numbers Games retailer. Validated tickets up to and including $599 can be claimed at your jackpot/daily Numbers Games retailer. Tickets $600 and over will be paid by check after claim is filed at a lottery claim center. IMPORTANT: This ticket is valid only for the date(s) shown. Winners must claim prizes within 180 days of the winning draw date. All tickets, transactions, and winners are subject to the directives of the director of the Missouri Lottery, the rules and regulations of the Missouri Lottery and state law, and tickets are only offered for sale in accordance with the same. Tickets are void and will not be paid if stolen, unissued, illegible, mutilated, altered, counterfeit in whole or part, misregistered, defective, incomplete, printed or produced in error, multiply printed, or if the ticket fails any of the Lottery's confidential validation tests. Liability for void tickets, if any, is limited to replacement of ticket or refund of retail sales prices. Not responsible for lost or stolen tickets. Players should check the ticket to be sure that it represents the correct plays and drawing date(s) intended upon purchase."

heavily on the language on the tickets' backsides to argue for a 180–day deadline, its own regulation says, "The information printed on the ticket stock shall not be interpreted as providing any prize or procedure other than authorized by the lottery statute contained in section 313.200, RSMo, for that game the rules of the commission and the rules for that game." 12 CSR 40–85.060(4).

To the extent that the commission was endeavoring to rely on internal policies—even those printed on the tickets' backsides—for authority in denying payment to Barnett, it ignores the requirements of the Administrative Procedures Act set out in Chapter 536 of the Revised Statutes. Its policy was what Section 536.010(6), RSMo Supp.2005, defines as a "rule:" an "agency statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency." Because its 180–day deadline policy was a rule under Section 536.010(4), the commission was obligated to comply with the publication and filing procedures for adoption of rules under Section 536.021, RSMo Supp.2005. *NME Hospitals, Inc. v. Department of Social Services,* 850 S.W.2d 71, 74 (Mo. banc 1993); *State v. Peters,* 729 S.W.2d 243, 246 (Mo.App. 1987). The commission's 180–day rule substantially affected the legal rights of lottery participants. *See Missouri State*

*Division of Family Services v. Barclay,* 705 S.W.2d 518, 521 (Mo.App.1985). Any rule not made in compliance with Section 536.021 is "null, void and unenforceable." Section 536.021.7.

Moreover, the lottery statutes in Chapter 313 of the Revised Statutes prohibit enforcement of rules that have not been promulgated. Section 313.220.1, RSMo Supp.2005, says, "No rule or portion of a rule promulgated under the authority of this chapter shall become effective unless it has been promulgated pursuant to the provisions of section 536.024, RSMo." The commission did not comply with the procedures set forth in Section 536.024, RSMo Supp.2005,[9] and promulgate a regulation requiring a 180–day deadline for redeeming winning tickets before Barnett's purchase of the lottery ticket and before the game's draw date.

The commission attempted to promulgate regulations regarding the payment of prizes by merely stating that winning tickets would be "validated in accordance with procedures for claiming and payment of prizes" and that it would "place detailed rules for claiming prizes in brochures to be made generally available to the public and so much as may be practicable on the reverse side of instant game tickets." 12 CSR 40–85.030(1)(F) and 12 CSR 40–60.030(3).[10] Such procedures—as is true

9. Section 536.024.2 says, "Upon filing any proposed rule with the secretary of state, the filing agency shall concurrently submit such proposed rule to the joint committee on administrative rules, which may hold hearings upon any proposed rule or portion thereof at any time." The joint committee on administrative rules is then given the opportunity to conduct a hearing, to file comments or recommendations concerning the proposed or final order of rulemaking, and to refer comments or recommendations to the appropriations and budget committees of the house of representatives and the appropriations com-

mittee of the senate. Sections 536.024.3, .4 and .5.

10. Section 536.021.2(3) says, "A proposed rule may incorporate by reference only if the material so incorporated is retained at the headquarters of the state agency[.]" "The statute ... states that a rule may incorporate material by reference—*not* that all of the material may be incorporated by reference." *Kansas Ass'n of Private Investigators v. Mulvihill,* 35 S.W.3d 425, 430 (Mo.App.2000) (emphasis in the original). Regulations 12 CSR 40–85.030(1)(F) and 12 CSR 40–60.030(3),

in this case—can substantially affect the legal rights of persons, and if an agency like the commission desires to have its rules possess effective legal force, it must satisfy the publication and filing requirements of Section 536.021. *Barclay*, 705 S.W.2d at 521.

Apparently, in recognition of its need to promulgate a regulation establishing a deadline for redemption of winning on-line game tickets, the commission promulgated 12 CSR 40–80.080(1), which became effective on March 30, 2003.[11] Regulation 12 CSR 40–80.080(1) says, "All winning tickets for any instant or pull-tab game must be claimed within one hundred eighty (180) days of the announced end of the game. All winning tickets for any on-line game must be claimed within one hundred eighty (180) days of the draw date for that game."[12]

This regulation, however, was promulgated too late to aid the commission in this case. As the Supreme Court concluded in *Department of Social Services v. Villa Capri Homes, Inc.*, 684 S.W.2d 327, 332 (Mo. banc 1985), "Duly promulgated substantive regulations have the force and effect of laws" and, therefore, can violate the Missouri Constitution's prohibition against enactment of any law that is "retrospective in its operation." Mo. CONST. art. I, Section 13.

■ A law "operates retrospectively where it 'takes away or impairs a vested or substantial right or imposes a new duty in respect to a past transaction.'" *Silcox v. Silcox*, 6 S.W.3d 899, 904 (Mo. banc 1999) (citation omitted). A vested right " 'must have become a title, legal or equitable, to the present or future enjoyment of property.'" *Id.* (citation omitted). Promulgation of 12 CSR 40–80.080 impaired Barnett's vested rights to the proceeds of his winning lottery ticket and imposed a duty in respect to the transaction. Before March 30, 2003, no regulation required players of on-line games to claim winning prizes within a set deadline; hence, 12 CSR 40–80.080 does not apply restrospectively to Barnett.

■ To the extent that the commission asserts that Barnett is bound by the commission's 180–day deadline as stated on the tickets' backsides as a matter of contract, it is wrong. "[S]tate agencies may not evade rulemaking by contract." *NME Hospitals*, 850 S.W.2d at 75. Moreover, we would be loath to enforce a contract in

---

however, do not incorporate any material by reference.

11. The commission brought this regulation to this court's attention for the first time in its motion for rehearing. We granted the motion for rehearing to address this regulation. That the regulation was overlooked by all involved in the case is understandable because the regulation is included in the compilation of rules for the Lottery's Instant Games. 12 CSR 40–80.010—12 CSR 40–80.130. An instant game is "the Missouri Lottery game in which a preprinted ticket is purchased and upon removal of a latex or other covering on the front of the ticket the ticket bearer determines his/her winnings, if any[.]" Regulation 12 CSR 40–80.010(1)(E). A separate compilation of rules exist for on-line games, 12 CSR 40–85.005—12 CSR 40–85.175, which is the type of game at issue in this case. An on-line game is "[a] game played on an on-line terminal which is in communication with the lottery's computer; also known as a computer-generated game." 12 CSR 40–85.005(4). Rather than setting forth the 180–day deadline for on-line games in the compilation of rules for on-line games, the commission oddly chose to tack the deadline for on-line games onto its regulation setting forth the deadlines for instant games.

12. Before March 30, 2003, the only deadline for claiming prizes was Regulation 40–80.080's deadline for instant games. Regulation 40–80.080(1) was amended on June 30, 2006, and now provides that "[a]ll winning tickets for any on-line game must be claimed within one hundred eighty (180) days of the last winning draw date on that ticket."

which one of the parties did not learn of a key provision of the agreement until after he had paid his money and entered into the bargain. Because the commission did not promulgate the 180–day redemption requirement as a rule before Barnett's purchase of the lottery ticket and before the game's draw date., it is "null, void and unenforceable." Section 536.021.7.

Hence, because the constitution, Section 313.300, and the commission's regulations and policies do not prohibit the commission from paying prize money beyond 180 days of the winning draw date in this case, we affirm the circuit court's judgment ordering the commission to pay the proceeds of a winning $100,000 lottery ticket to Barnett.

EDWIN H. SMITH, Chief Judge, and PATRICIA A. BRECKENRIDGE, Judge, concur.