

# In the Missouri Court of Appeals
# Eastern District
## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI ex rel. ARNIE C. DIENOFF, | ) ) ) | No. ED99832 |
| Respondent, | ) ) | |
| vs. | ) ) | |
| PATRICIA GALKOWSKI, ST. CHARLES COUNTY AMBULANCE DISTRICT, | ) ) ) | Appeal from the Circuit Court of St. Charles County |
| Appellants, | ) ) | |
| and | ) ) | Honorable Ted C. House |
| RICH A. CHRISMER and ST. CHARLES COUNTY, MISSOURI, | ) ) ) | |
| Defendants. | ) | Filed: January 27, 2014 |

Before Lisa S. Van Amburg, P.J., Patricia L. Cohen, J., and Gary M. Gaertner, Jr., J.

PER CURIAM.

### Introduction

The St. Charles County Ambulance District (Ambulance District) and Patricia Galkowski, the recording secretary of the Ambulance District's Board of Directors, appeal the trial court's judgment granting in part Count X of Arnie Dienoff's ten-count "petition for writ of mandamus, declaratory judgment, injunctive relief and judicial review" on the grounds that the trial court exceeded its authority when it renamed and rewrote ballot language for a tax increase

to benefit the Ambulance District.[1]  The Ambulance District urges this court to exercise its discretion to review the case under the public interest exception to the mootness doctrine.  We reverse.[2]

### *Factual and Procedural Background*

On January 16, 2013, the Ambulance District Board of Directors (Board) voted on ballot language proposing a tax increase for the benefit of the Ambulance District.  The Board approved the ballot initiative, entitled "Proposition Lifesavers," in a vote of five to one. Proposition Lifesavers provided:

> St. Charles County Ambulance District serves all of the municipalities and unincorporated areas of St. Charles County by providing paramedic-staffed ambulances that respond to the emergency medical needs of a growing and aging population.  In order to prevent significant reductions in staff, a decrease in the number of available ambulances, and delays in response times to 911 calls, shall the Board of Directors of St. Charles County Ambulance District be authorized to levy an additional general tax, for the first time since the District's inception over 38 years ago, of not more than eleven cents per one hundred dollars assessed valuation, the revenues from which shall be deposited into the general fund?

---

[1] Rich A. Chrismer and St. Charles County are not parties to this appeal.

[2] Mr. Dienoff failed to file a timely respondent's brief.  Pursuant to this court's September 6, 2013 order, Mr. Dienoff's brief was due on October 31, 2013.  On November 8, 2013, Mr. Dienoff filed a motion for extension of time to file a responsive brief, and the court granted him an extension until November 15, 2013.  On November 15, 2013, Mr. Dienoff filed another motion for an extension of time, requesting a seven-day extension to complete his responsive brief. This court issued an order granting Mr. Dienoff the requested extension of time until November 22, 2013 to file his brief and stating, "No further extension will be considered. If respondent fails to file a brief, he shall not be permitted oral argument.  E.D. Rule 395(f)."  On November 23, 2013, Mr. Dienoff sent an email to the court with his untimely brief attached. This court entered an order on November 27, 2013 stating that:  Mr. Dienoff's email "does not constitute filing a document with the Court"; Mr. Dienoff "has still not properly filed the paper brief with the requisite number of copies as required by the rule"; and Mr. Dienoff "shall not be permitted oral argument."  On December 3, 2013, we granted the Ambulance District's motion to strike Mr. Dienoff's respondent's brief.  On December 4, 2013, Mr. Dienoff attended oral arguments and the court permitted him to sit at counsel table.

On January 18, 2013, the Board submitted the ballot question to the St. Charles County Election Authority for inclusion on the April 2, 2013 ballot.

On February 8, 2013, Mr. Dienoff, a resident of St. Charles County, acting pro se, filed a "petition for writ of mandamus, declaratory judgment, injunctive relief and judicial review" (Petition) challenging various actions taken by the Board and the St. Charles County Election Authority (Election Authority).[3] In Count X of the Petition, Mr. Dienoff alleged, among other things, that the language of "Proposition Lifesavers" was "slanted, tainted, misleading and confusing to the average voter."[4] Mr. Dienoff requested that the trial court "rewrite the ballot Question so as not to be unfair and taint the voter in information that is not relevant to the question before the voter." The Ambulance District and Patricia Galkowski, the Board's recording secretary, filed an answer denying Mr. Dienoff's allegations that the ballot question was improperly worded.

On February 13, 2013, the trial court held a hearing on Mr. Dienoff's Petition.[5] At the hearing, Mr. Dienoff, appearing pro se, argued that the language of Proposition Lifesavers was "unfair and clouded." Mr. Dienoff further contended that the ballot question violated Chapter 116's fiscal note requirement and word limit. Counsel for the Ambulance District countered that Chapter 116 "only applies to elections on statewide ballot measures." Counsel also asserted

---

[3] The Petition contained ten counts, several of which related to the Election Authority's refusal to place Mr. Dienoff's name on the ballot as a candidate for the Board. In Count X, the only count relating to Proposition Lifesavers, Mr. Dienoff did not identify a statute or rule pursuant to which he requested the trial court review and rewrite the ballot question.

[4] In Count X, Mr. Dienoff also alleged that the ballot question "was not presented and voted upon in accordance with the law" and "[n]o fiscal note was provided notifying the voters of the additional cost to their tax bill as a result of such vote."

[5] The trial court also heard arguments on Mr. Deinoff's motion for a temporary restraining order to enjoin the Election Authority from printing ballots containing Proposition Lifesavers until the trial court ruled on the Petition. The trial court denied the motion for a temporary restraining order.

that because Chapter 190, which governs ambulance districts, did not provide specific language for ballot initiatives proposing tax increases, "that was within the sound discretion of [the Board] to make the decision as long as it can be phrased as a yes or no question."

After hearing evidence and arguments, the trial court expressed its concern that Proposition Lifesavers "reads like a campaign brochure. . . ." The court explained:

> It's argumentative, the ballot language in my view – I'm just throwing this out there, okay. I'm calling for your reply. . . . I've seen a lot of tax increases on a lot of ballots over the years, and I can't remember any of them ever saying when the last tax increase was. This language for the first time – to levy an additional general tax for the first time since the district's inception 38 years ago, it's a great line for a flyer that lands in your mailbox, okay, but should it be on the ballot? Is it not just an argument in favor of the ballot initiative?
> . . . . Same thing with the language in order to prevent significant reduction in staff, a decrease in the number of available ambulances, delays in response times to 911 calls, calling it Proposition Lifesaver. . . . Who would vote against that?

The trial court asked counsel for the Ambulance District, "Does the Court have authority to rewrite the ballot language?," and counsel answered, "I think – without clear either precedential or statutory support, I think not."

The trial court then urged Mr. Dienoff to "show me my authority" to "either take this off the ballot or rewrite that language." Mr. Dienoff replied, "I don't think it's ever been tested. And I've searched and I asked." When the trial court stated, "You're asking me to rewrite this language, and I don't know that I have the authority to do it," Mr. Dienoff argued that Proposition Lifesavers "go[es] beyond the scope" of Section 190.040, which provides for the organization of an ambulance district.[6] The trial court asked, "Do you agree that 190.040 applies

---

[6] Section 190.040.1 provides ballot language "[f]or the organization of a district which shall levy a property tax" and "[f]or the organization of a district which shall levy a sales tax." Mo. Rev. Stat. § 190.040.1–.2

to the formation of the District?," and Mr. Dienoff answered, "And the first tax increase. And I think it should apply to all tax increases thereafter. . . ."

Following additional arguments and a fifteen-minute recess, the trial court announced its decision:

> Now, with regard to the ballot language, I believe there is inherent in the law the necessity that ballot proposals be fair and neutral, unbiased. This ballot proposal is not fair and it is not neutral and it is not unbiased. It just invites and compels the voter to vote for this. And I don't think a ballot proposal should do that. I've thought quite a bit about the Court's authority to change this language, but there has to be a provision to address unfair, inappropriate ballot language. And I think that this Petition filed by Mr. Dienoff raises – properly raises that issue. So the relator prevails. . . .

On February 25, 2013, the trial court issued its amended judgment[7] granting in part and denying in part Count X of the Petition. The trial court found that "the title and ballot language for 'Proposition Lifesavers' submitted by the [Board] to be submitted to the voters of St. Charles County at the April 2, 2013 election. . .are impermissibly biased." The court explained:

> The language as submitted is not a fair, impartial and neutral summary, but instead makes arguments in favor of the proposal. Such prejudicial arguments in the ballot language include statements that the population of St. Charles County is growing and aging, that the tax increase will prevent delays in response times to 911 calls and that this would be the first tax increase since the district's inception over 38 years ago.

The trial court renamed the initiative "Proposition E" and modified it to read as follows:

> The St. Charles County Ambulance District serves all of the municipalities and unincorporated areas of St. Charles County by providing paramedic-staffed ambulances that respond to emergency medical needs. Shall the Board of Directors of the St. Charles County Ambulance District be authorized to levy an additional general tax of not more than eleven cents per one hundred dollars assessed valuation, the revenues from which shall be deposited in the general fund?

---

[7] The trial court amended a February 14, 2013 judgment, which does not appear in the record on appeal. In its brief, the Ambulance District asserts that the amended judgment did not affect the trial court's ruling as to Proposition Lifesavers.

5

The trial court did not identify any rule, statute, or case supporting a trial court's authority to review a Board-approved ballot question proposing a tax increase. The trial court found that "no fiscal note requirement applies to this ballot and that there is no word limit," and it denied Count X "in all other respects."

The modified ballot question appeared on the April 2, 2013 ballot, and the proposition failed. On April 15, 2013, the Ambulance District appealed the portion of the trial court's judgment renaming and rewriting Proposition Lifesavers.[8]

This court issued the Ambulance District an order to show cause "why this appeal should not be dismissed because it is moot."[9] The Ambulance District filed an answer denying that the issue was moot but asserting that, even if it is moot, the court may exercise its discretion to review the issue because it "falls squarely within an exception allowing the Court to review legal issues of public importance and of public interest of a recurring nature that would otherwise escape review." Mr. Dienoff failed to file a timely response to the Ambulance District's answer to the court's order to show cause. This court entered an order concluding that the appeal is moot but taking with the case the issue of whether to review the appeal under the public interest exception to the mootness doctrine.

---

[8] The International Association of Fire Fighters, Local 2665 filed a brief of amicus curiae supporting the Ambulance District's claim that the trial court lacked authority to rewrite the ballot question.

[9] This court explained:

> The appeal concerns the ballot language for a proposition that was on the April 2, 2013 election. Obviously, the date of April 2, 2013 has passed. Therefore, a decision by this Court that the amendment to the ballot language was improper could have no affect on the April 2nd election. See Armstrong v. Elmore, 990 S.W.2d 62, 64 (Mo.App.W.D. 1999). Because we cannot grant any relief to Appellants, it appears that this appeal is moot.

6

We review the grant of a writ of mandamus for an abuse of discretion. State ex rel. Feltz v. Bob Sight Ford, Inc., 341 S.W.3d 863, 865 (Mo.App.W.D. 2011). A trial court abuses its discretion when its ruling is "so arbitrary and unreasonable as to shock the sense of justice and indicates a lack of careful consideration." Burnett v. Kansas City Sch. Bd., 237 S.W.3d 237, 239 (Mo.App.W.D. 2007) (quotation omitted). "Where, however, the foundation of the writ is based upon interpretation of a statute, we review the statute's meaning *de novo*." Pitts v. Williams, 315 S.W.3d 755, 759 (Mo.App.W.D. 2010) (citing State ex rel. Unnerstall v. Berkemeyer, 298 S.W.3d 513, 517 n.5 (Mo. banc 2009)).

"The standard of review in a declaratory judgment case is the same as in any other court-tried case." Smith v. City of St. Louis, 395 S.W.3d 20, 24 (Mo. banc 2013) (quotation omitted). We will "affirm the trial court's judgment regarding issues of fact unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." Andresen v. Bd. of Regents of Mo. Western State College, 58 S.W.3d 581, 585 (Mo.App.W.D. 2001). Where, as here, the relevant facts are not disputed, the only issue for appellate review is whether the trial court drew the proper legal conclusion from those facts. See State Farm Mut. Auto. Ins. Co. v. Stockley, 168 S.W.3d 598, 600 (Mo.App.E.D. 2005). "We review questions of law *de novo*." Andresen, 58 S.W.3d at 585.

### Discussion

*1. Mootness*

We first consider the Ambulance District's second point relied on alleging that the propriety of the trial court's actions in renaming and rewriting Proposition Lifesavers is of sufficient public interest to require appellate review under the public interest exception to the

mootness doctrine.[10]  The Ambulance District urges this court to consider the issue on appeal because it concerns:   (1) the rights of the voting public; (2) the Board's authority and responsibility "to carry out [its] rights and responsibilities to secure funding for the District under § 190.060"; and (3) "the health and welfare of the public in terms of rendering emergency medical services to the public."

As stated in this court's order of September 6, 2013, the issue on appeal is moot because the April 2, 2013 election has passed and "it does not appear there is any relief that can be granted. . . ."  See State ex rel. Reed v. Reardon, 41 S.W.3d 470, 473 (Mo. banc 2001) ("[A] cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy.").  Missouri courts do not determine moot causes of action.  Jackson County Bd. of Election Com'rs v. City of Lee's Summit, 277 S.W.3d 740, 743 (Mo.App.W.D. 2008).

An exception to the mootness doctrine applies, however, when "a case presents an issue that (1) is of general public interest and importance, (2) will recur and (3) will evade appellate review in future live controversies."  State ex rel. Mo. Public Defender Com'n v. Waters, 370 S.W.3d 592, 603 (Mo. banc 2012) (quotation omitted).  "The public interest exception is very narrow and if an issue of public importance in a moot case is likely to be present in a future live controversy practically capable of review, this exception does not apply."  Jenkins v. McLeod, 231 S.W.3d 831, 833 (Mo.App.E.D. 2007) (quotation omitted).  We will exercise our discretion to invoke the public interest exception "if there is some legal principle at stake not previously

---

[10] For ease of analysis, we address out of order the Ambulance District's points relied on.

ruled as to which a judicial declaration can and should be made for future guidance." Waters, 370 S.W.3d at 603 (quotation omitted).

In the present case, the underlying issue of whether, in the absence of statutory guidance, the trial court has authority to re-word a ballot question proposing a tax increase for the Ambulance District is of general public interest and importance. Also, the controversy is likely to recur. In a resolution dated October 23, 2013, the Board declared its intent to "tak[e] the necessary steps to seek [an eleven-cent tax levy per one hundred dollars of assessed valuation] tax increase on the April 8, 2014 ballot."[11] Cf. City of Lee's Summit, 277 S.W.3d at 745 (declining to consider whether the city had the authority to place an ordinance on a ballot in a past election where the city "ha[d] not articulated any specific intent to use the same means to place another ordinance on the ballot in the future.").

Lastly, the issue of the trial court's authority to rewrite a ballot question approved by the Board and submitted to the St. Charles County Election Authority may evade appellate review if we do not exercise our discretion to review it in this case. See, e.g., Moore v. Ogilvie, 394 U.S. 814, 816 (1969); State ex rel. AG Processing, Inc. v. Pub. Serv. Com'n, 276 S.W.3d 303, 306 (Mo.App.W.D. 2008). As previously stated, the Ambulance District intends to re-submit Proposition Lifesavers to the St. Charles County Election Authority for inclusion on the April 8,

---

[11] "In determining whether a case is moot, we may consider matters outside the record." TCF, LLC v. City of St. Louis, 402 S.W.3d 176, 181 (Mo.App.E.D. 2013). The Board's Resolution #13-08, entitled "Approval of Tax Increase Proposition on April 8, 2014," provides:

> The Board of Directors believes that authorization of an additional eleven cent ($0.11) tax levy per one hundred dollars of assessed valuation, is necessary to address the future operating and capital requirements of St. Charles County Ambulance District, and is in the best interest of those served by the St. Charles County Ambulance District. Accordingly, the Board shall commence the taking of the necessary steps to seek a corresponding tax increase on the April 8, 2014 Ballot.

2014 ballot. Section 115.281 requires the election authority to print and make available absentee ballots "not later than the sixth Tuesday prior to each election, or within fourteen days after candidates' names or questions are certified. . . ." Mo. Rev. Stat. § 115.281.1. "No court shall have the authority to order an individual or issue be placed on the ballot less than six weeks before the date of the election. . . ." Mo. Rev. Stat. § 115.125.2. If, as occurred in this case, a voter challenged the wording of Proposition Lifesavers on the eve of this six-week statutory deadline resulting in a trial court determination to rewrite the ballot language, the issue of the trial court's authority to rewrite the ballot question would recur and evade review. This court will, therefore, exercise its discretion to decide the issue presented. See, e.g., McNeil-Terry v. Roling, 142 S.W.3d 828, 832 (Mo.App.E.D. 2004); Loving v. City of St. Joseph, 753 S.W.2d 49, 52 (Mo.App.W.D. 1988).

### 2. *The Trial Court's Authority*

In its first point on appeal, the Ambulance District claims the trial court erred in granting Mr. Dienoff's Petition and renaming and rewriting Proposition Lifesavers "because no statutory authority or case precedent exists granting the Circuit Court the authority to rewrite municipal ballot language." More specifically, the Ambulance District contends that the trial court exceeded its authority in modifying the ballot language because Mo. Rev. Stat. § 190.001, et seq.,[12] entitled the Comprehensive Emergency Medical Services Systems Act ("Emergency Services Act"), vests authority in the Ambulance District to establish and maintain ambulance services and provides no guidance as to ballot language for municipal tax increases.

"As an initial matter, we note that the right to contest an election is conferred by statute only; it is not a common law or equitable right." Wright-Jones v. Johnson, 256 S.W.3d 177, 180

---

[12] Unless otherwise noted, all statutory references are to RSMO 2000, as amended.

(Mo.App.E.D. 2008) (involving a pre-election challenge to a candidate's qualifications for nomination).  Likewise, the authority of the trial court "is confined strictly to statutory provisions governing election contests and the letter of the law is the limit of its power."  State ex rel. Bushmeyer v. Cahill, 575 S.W.2d 229, 232 (Mo.App.1978) (quotation omitted).  "The relief a court may grant is limited to that specifically authorized by statute."  Bd. of Election Com'rs of St. Louis County v. Knipp, 784 S.W.2d 797, 798 (Mo. banc 1990).

In an apparent effort to ground his claim in statutory authority, Mr. Dienoff argued that Proposition Lifesavers violated Section 116.025, which requires that summary statements for all statewide ballot measures constitute "true and impartial statements of the effect of a vote for and against the measure in language neither intentionally argumentative nor likely to create prejudice for or against the proposed measure."  Mo. Rev. Stat. § 116.025; see also Billington v. Carnahan, 380 S.W.3d 586, 591–92 (Mo.App.W.D. 2012).  Section 116.190 permits a Missouri citizen to challenge an initiative petition on the basis that its ballot title or fiscal note is insufficient or unfair.  Mo. Rev. Stat. § 116.190.1; Prentzler v. Carnahan, 366 S.W.3d 557, 562 (Mo.App.W.D. 2012).  However, Section 116.020 expressly provides that Chapter 116 "shall apply to elections on *statewide* ballot measures."[13]  Mo. Rev. Stat. § 116.020 (emphasis added).

---

[13] Although Section 116.190 does not provide, among other things, a basis for challenging ballot language proposing a tax increase for the benefit of the Ambulance District, we note that, under that section, "[t]he burden is on the opponents of the [summary statement] language to show that the language was insufficient and unfair."  Billington v. Carnahan, 380 S.W.3d at 591.  At the hearing on his Petition, Mr. Dienoff presented no evidence in support of his argument that Proposition Lifesavers was unfair.  Additionally, under Section 116.190, "[a] ballot title is sufficient and fair if it 'makes the subject evident with sufficient clearness to give notice of the purpose to those interested or affected by the proposal.'"  Cures Without Cloning v. Pund, 259 S.W.3d 76, 81 (Mo.App.W.D. 2008) (quoting United Gamefowl Breeders Ass'n of Mo. v. Nixon, 19 S.W.3d 137, 140 (Mo. banc 2000)).  The test "is not whether this is the best summary, but whether the summary gives the voter a sufficient idea of what the [initiative] would accomplish, without language that is intentionally unfair or misleading."  Billington, 380 S.W.3d at 595.

11

Mr. Dienoff has cited no statute, and we have found none, authorizing a trial court to rename and rewrite a ballot question proposing an increase in taxes for the support of an ambulance district.[14] Indeed, at the hearing on his Petition, when the trial court asked Mr. Dienoff to "show me my authority" to "either take this off the ballot or rewrite that language," Mr. Dienoff candidly replied, "I don't think it's ever been tested. And I've searched and I asked." Later, when discussing the rationale for its decision, the trial court stated, "I believe there is inherent in the law the necessity that ballot proposals be fair and neutral, unbiased."

Recourse to "inherent authority" cannot substitute for the absence of statutory authority in the context of challenges to municipal elections. See Knipp, 784 S.W.2d at 798. "Since the legislature, rightfully or wrongfully, has not enacted any statute pertaining to the matter, we cannot allow the instant contest simply on general principles." Felker v. City of Sikeston, 334 S.W.2d 754, (Mo.App. 1960) (internal quotations omitted). "If and when the General Assembly in its wisdom determines that provision should be made for contesting elections of this character, it will, no doubt, enact appropriate legislation for that purpose." Id. "In the meantime, we have no right to supply by judicial fiat this legislative void." Id.

---

[14] In the context of statewide ballot initiatives, our courts have noted: "Courts are understandably reluctant to become involved in pre-election debates over initiative proposals." Cures Without Cloning, 259 S.W.3d at 81; see also State ex rel. Humane Society of Mo. v. Beetem, 317 S.W.3d 669, 673 (Mo.App.W.D. 2010). This is because "[a] lawsuit to strike an initiative or referendum from a ballot is one of the deadliest weapons in the arsenal of the measure's political opponents." Missourians to Protect the Initiative Process v. Blunt, 799 S.W.2d 824, 833 (Mo. banc 1990) (Rendlen, J., dissenting). "[I]t is generally improper for courts to adjudicate pre-election challenges to a measure's substantive validity, because such pre-election review involves issuing an advisory opinion, violates ripeness requirements, undermines the policy of avoiding unnecessary constitutional questions, and constitutes unwarranted judicial interference with a legislative process." Id. at 834 (quoting *Pre-election Judicial Review of Initiatives and Referendums,* 64 NOTRE DAME L. REV. 298 (1989)). As a result, "[w]hen courts are called upon to intervene in the initiative process, they must act with restraint, trepidation, and a healthy suspicion of the partisan who would use the judiciary to prevent the initiative process from taking its course." Cures Without Cloning, 259 S.W.3d at 81.

12

Mr. Dienoff's reliance on the Emergency Services Act as a basis for limiting the Board's authority to draft ballot questions relating to tax increases for support of the Ambulance District also fails. "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." Anani v. Griep, 406 S.W.3d 479, 482 (Mo.App.E.D. 2013) (quoting City of Willow Springs v. Mo. State Librarian, 596 S.W.2d 441, 445 (Mo. banc 1980)). "This court enforces statutes as they are written, not as they might have been written." Turner v. Sch. Dist. of Clayton, 318 S.W.3d 660, 667 (Mo. banc 2010). Accordingly, "provisions not plainly written in the law, or necessarily implied from what is written, should not be added by a court under the guise of construction to accomplish an end the court deems beneficial." Anani, 406 S.W.3d at 482 (quoting Harrison v. MFA Mut. Ins. Co., 607 S.W.2d 137, 143 (Mo. banc 1980)).

The Ambulance District "was created pursuant to Chapter 190 of the Missouri Revised Statutes[,] . . . which grants various powers to ambulance districts." Abbott Ambulance v. St. Charles County Ambulance Dist., 193 S.W.3d 354, 355 (Mo.App.E.D. 2006). Section 190.060.1 provides:

> An ambulance district shall have the following governmental powers, and all other powers incidental, necessary, convenient or desirable to carry out and effectuate the express powers: (1) To establish and maintain an ambulance service within its corporate limits, and to acquire for, develop, expand, extend and improve such service[.]

Mo. Rev. Stat. § 190.060.1(1).

Each ambulance district has a board, comprised of six publicly elected ambulance district directors. Mo. Rev. Stat. § 190.050.1. "The board of directors of a district shall possess and exercise all of its legislative and executive powers." Mo. Rev. Stat. § 190.055.1. Among its

13

powers, the board may levy and collect taxes, subject to voter approval, to maintain ambulance service for the benefit of the ambulance district's residents. Mo. Rev. Stat. § 190.010.2.

The Emergency Services Act provides guidance for the wording for ballot questions in several specific instances. In eight directory provisions, the Emergency Services Act states that certain ballot questions "shall be submitted in substantially" the form set forth therein.[15] For example, the statute states:

> For the organization of a district which shall levy a property tax, the question shall be submitted in substantially the following form:
>
> Shall there be organized in the counties of ................................................, state of Missouri, an ambulance district for the establishment and operation of an ambulance service to be located within the boundaries of said proposed district and having the power to impose a property tax not to exceed the annual rate of thirty cents on the hundred dollars assessed valuation without voter approval, and such additional tax as may be approved hereafter by vote thereon, to be known as "....................................... Ambulance District" as prayed for by petition filed with the county clerk of ............................... County, Missouri, on the ...... day of ......, 20....?

Mo. Rev. Stat. § 190.040.1. Likewise, the Emergency Services Act sets forth proper language for ballot questions that propose: organizing "a district which shall levy a sales tax," Mo. Rev. Stat. § 190.040.2; increasing or decreasing the number of directors on the Board, Mo. Rev. Stat. § 190.051.1; borrowing money and issuing bonds to pay for "any property or equipment necessary or incidental to the operation of an ambulance service," Mo. Rev. Stat. § 190.065.1–.2; levying and collecting taxes to fund the Ambulance District's pension program, Mo. Rev. Stat. § 190.074; imposing sales taxes for the provision of emergency phone services in Warren County, Mo. Rev. Stat. § 190.292.3; borrowing money and issuing bonds in Warren County, Mo. Rev. Stat. § 190.296.2; and imposing a county sales tax for the purpose of providing central

---

[15] A statute providing that "the ballot shall be *substantially* in the form set forth" is "directory rather than mandatory." City of Raytown v. Kemp, 349 S.W.2d 363, 369 (Mo. banc 1961) (emphasis in original); see also Felker, 334 S.W.2d at 756.

14

dispatching for fire protection, emergency ambulance service, and other emergency services, Mo. Rev. Stat. § 190.335.3.

Other sections of the Emergency Services Act provide mandatory ballot language for specific questions.[16] For example, a question relating to the continuation or termination of a sales tax for the purpose of providing central dispatching for fire protection, emergency ambulance service, or emergency telephone services:

> shall be submitted in the following form:
>
> Shall the county of ............ (insert name of county) continue to impose a county sales tax of ............ (insert rate of percent) percent for the purpose of providing central dispatching of fire protection, emergency ambulance, or emergency telephone, services?

Mo. Rev. Stat. § 190.337.2. Additionally, ballot questions relating to the imposition of a tax to finance an emergency telephone service and the establishment of a fund for wireless enhanced 911 service, "shall contain, but [are] not limited to" the language provided by statute. Mo. Rev. Stat. §§ 190.337.1–.2; 190.440.1–.2.

Significantly, although the legislature provided explicit direction with respect to ballot questions proposing the commencement, termination, and continuation of various taxes for the benefit of the Ambulance District, the legislature did not prescribe particular language for a ballot question proposing a tax increase. "[W]hen a statute enumerates the subjects or things on which it is to operate . . . it is to be construed as excluding from its effect all those not expressly mentioned." Greenbriar Hills Country Club v. Dir. of Revenue, 935 S.W.2d 36, 38 (Mo. banc 1996) (quoting Giloti v. Hamm-Singer Corp., 396 S.W.2d 711, 713 (Mo. 1965)).

---

[16] "Generally the use of the word 'shall' connotes a mandatory duty." St. Louis Police Officers' Ass'n v. Bd. of Police Com'rs of City of St. Louis, 259 S.W.3d 526, 528 (Mo. banc 2008).

Nor does this court conclude that Chapter 190 "necessarily implies" that the Board must word ballot questions proposing tax increases in a particular manner. "If the intent of the legislature is clear and unambiguous, by giving the language used in that statute its plain and ordinary meaning, then we are bound by that intent and cannot resort to any statutory construction in interpreting the statute." Goerlitz v. City of Maryville, 333 S.W.3d 450, 455 (Mo. banc 2011) (quotation omitted). The Emergency Services Act broadly authorizes the Ambulance District to "to acquire for, develop, expand, extend and improve [its ambulance] service." Mo. Rev. Stat. § 190.060.1(1). While the statute proposes or mandates particular language in specified ballot questions, the statute in no way limits the Board's discretion to draft ballot questions proposing tax increases.

Applying the ordinary rules of construction, we conclude that the exclusion of specific guidance with respect to ballot questions proposing tax increases, especially in light of the legislature's specific instructions with respect to other tax-related ballot questions, was an intentional act by the legislature to allow the Board discretion in drafting ballot language proposing general tax increases. See, e.g., McCoy v. The Hershewe Law Firm, P.C., 366 S.W.3d 586, 594 (Mo.App.W.D. 2012). "Effect must be given to the legislative intent from what the legislature said and not from what the legislature may have intended to say or inadvertently failed to say." State ex rel. Barnett v. Mo. State Lottery Com'n, 196 S.W.3d 72, 74 (Mo.App.W.D. 2006); see also State ex rel. Koster v. Cowin, 390 S.W.3d 239, 244 (Mo.App.W.D. 2013) ("We cannot engraft language onto a statute that was not provided by the legislature."). "We judges should use the legislature's words as they are given to us. If legislators disagree with the results their current words produce, they can legislate and give us

16

some new words." <u>Middleton v. Mo. Dept. of Corrections</u>, 278 S.W.3d 193, 201 (Mo. banc 2009) (Wolff, J., dissenting).  Point granted.[17]

### *Conclusion*

The judgment of the trial court with respect to Count X's revisions to Proposition Lifesavers is reversed and we remand to the trial court for entry of a judgment consistent with this opinion.

---

[17] The trial court acknowledged the need for statutory authority when it stated, on the record as it announced the judgment, that "there has to be a provision to address unfair, inappropriate ballot language."  We appreciate the trial court's concern and note that nothing in this opinion forecloses a registered voter from contesting "the result of any election on any question. . . ." Mo. Rev. Stat. § 115.553.2.