**Stephen J. PITTS, Respondent,**

v.

**Janet K. WILLIAMS and Ronald J. Levy, Appellants.**

**No. WD 71275.**

Missouri Court of Appeals, Western District.

July 6, 2010.

Chris Koster, Attorney General, Caleb M. Lewis, Assistant Attorney General, Jefferson City, MO, for Appellants.

Frederick A. Duchardt, Jr., Trimble, MO, for Respondent.

Before Division II: MARK D. PFEIFFER, Presiding Judge, and VICTOR C. HOWARD and ALOK AHUJA, Judges.

MARK D. PFEIFFER, Presiding Judge.

Janet Williams (Williams) and Ronald Levy (Levy), employees of the Missouri Department of Social Services—Children's Division (collectively referred to as the Children's Division), appeal the judgment of the Circuit Court of Carroll County (trial court) granting a writ of mandamus requiring the Children's Division to commence the administrative appeal process and to release the investigative records allegedly substantiating the finding by the Children's Division that Stephen Pitts (Pitts) had committed child abuse or ne-

glect. On appeal, the Children's Division argues that section 210.150.2(5)[1] does not require it to produce such documentation while a criminal investigation is ongoing. We disagree and affirm the judgment of the trial court.

## Factual and Procedural Background

On August 18, 2008, the Ray County office of the Children's Division notified Pitts that a report of child abuse and neglect had been substantiated against him by the Children's Division. Pitts made a timely request for administrative appeal of this agency determination as authorized by section 210.152. Pitts simultaneously sought disclosure of the reports and other investigative documents contemplated by section 210.150. Williams, the circuit manager for the Ray County office of the Children's Division, informed Pitts that the Children's Division refused to release the requested documents or commence the administrative appeal process because there was an ongoing law enforcement criminal *investigation* based upon the alleged child abuse.[2]

Pitts did not initially contest the Children's Division's position on document disclosure. However, after eight months of waiting to either be charged with a crime or to receive notification from the prosecutor that the criminal investigation was concluded without formal charges, Pitts filed a petition for a writ of mandamus requesting that the Children's Division be required to immediately turn over the sought-after investigative documents and begin the administrative appeal process.[3] The trial

---

1. All citations are to RSMo Cum.Supp.2009 unless otherwise indicated.

2. While no *charges* had been filed against Pitts, the Prosecuting Attorney for Carroll County had notified the Children's Division

that there was an active and open *investigation* of Pitts "pending."

3. In addition to section 210.152, the administrative appeal process is outlined by 13 C.S.R. 35–31.025.

court granted Pitts's mandamus petition and ordered that the Children's Division commence the administrative appeal process and produce the requested documents. However, the document production was stayed pending the appeal to this court.

### Mootness Doctrine

After this appeal was fully briefed, but before this appeal was procedurally taken under submission by this court, the Carroll County Prosecutor notified the parties that the Pitts investigation was complete and the prosecutor would not be pursuing criminal charges against him. Given this notification to the parties from the prosecutor, the Children's Division no longer objects to production of the investigative reports in question. Consequently, the controversy this court was asked to decide between these parties is removed and this appeal is moot. " 'When an event occurs that makes a court's decision unnecessary or makes it impossible for the court to grant effectual relief, the case is moot and generally should be dismissed.' " *State ex rel. Claudia Lee & Assocs., Inc. v. Bd. of Zoning Adjustment of Kansas City,* 297 S.W.3d 107, 111–12 (Mo.App. W.D.2009) (quoting *State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n,* 276 S.W.3d 303, 306 (Mo.App. W.D.2008)).

In the instant case, however, both parties have requested that this court take up the substance of the contested matter despite the mootness of the appeal. This joint request, even though agreed upon by both parties, does not empower this court to hear a moot appeal absent an authorized exception. The mootness doctrine possesses at least two such exceptions which allow for appellate review of an otherwise non-justiciable controversy: (1) The controversy becomes moot after it was argued and submitted; (2) the underlying issue is of general public interest and importance, is recurring, and otherwise is likely to continue to evade appellate review. *Reiz v. Bd. of Zoning Adjustment of Kansas City,* 316 S.W.3d 331 (Mo.App. W.D.2010). We conclude that the present appeal meets the requirements of the second exception.

In the present case, the underlying issue of the mechanics of the administrative appeal process after an individual has been found by the Children's Division to have abused or neglected a child is of general public interest and importance. Missouri's administrative appeal process involves the often competing and equally important statutory procedures designed to protect the due process rights of its citizens while also ensuring the protection and privacy of the alleged victims of child abuse and those that report the alleged abuse. As the facts of this case illustrate, this procedural scenario is of a category that tends to be capable of repetition yet evades appellate review.

After being notified by the Children's Division in August of 2008 that the Children's Division had investigated and substantiated child abuse by Pitts, Pitts promptly initiated the administrative appeal process to clear his name. In fact, though allowed sixty days to file his appeal, § 210.152.3, Pitts filed his administrative appeal within eleven days. However, in September of 2008, the Children's Division notified Pitts that it refused to process his appeal while law enforcement *investigation* of the allegations of abuse and the prosecutorial decision to proceed or not proceed with formal criminal charges was pending. After the *investigation* had been open and ongoing eight months later without the initiation of formal charges by the Carroll County Prosecutor, Pitts hired an attorney and peti-

tioned the trial court for a writ of mandamus on May 14, 2009. On July 14, 2009, the trial court granted Pitts's mandamus petition, entered judgment for Pitts, and this appeal ensued. After the appeal had been fully briefed by the parties, oral argument had been scheduled, and the appeal was within days of oral argument and submission, the Carroll County Prosecutor's decision to close the Pitts *investigation* without pursuing criminal *charges* rendered the appeal moot.

It is readily apparent to this court that Pitts zealously and promptly pursued his rights. Despite his diligence, almost two years elapsed from the date Pitts learned of the Children's Division's substantiated abuse finding until events creating mootness overtook the present appeal process. Since the appropriate law enforcement agency must be informed *immediately* of any report of child abuse or neglect that the Children's Division determines merits investigation, § 210.145.4, we conclude that prosecuting attorneys should consistently be able to decide to pursue or not pursue criminal charges *before* the appellate process and review by an appellate court regarding the underlying contested issue can be completed.[4] Consequently, we find that this issue of section 210.150 document production by the agency tends to evade review. Furthermore, the Children's Division informs us that Pitts's fact pattern does not represent an isolated case and that determination of the contested issue in this case would provide valuable guidance in future administrative appeal proceedings involving allegations of abuse by the Children's Division as it relates to the

release of investigative records. Accordingly, we conclude that this appeal falls within one of the recognized exceptions to the mootness doctrine, and we choose to evaluate the substance of the underlying contested issue on appeal.

## Standard of Review

■ The standard of review for a writ of mandamus is an abuse of discretion. *State ex rel. Unnerstall v. Berkemeyer,* 298 S.W.3d 513, 517 n. 5 (Mo. banc 2009). Where, however, the foundation of the writ is based upon interpretation of a statute, we review the statute's meaning *de novo. Id.*

## Analysis

### *Relevant History and Procedures*

Before addressing the question at the heart of this appeal, we briefly recite the general background and procedures of a child abuse investigation by the Children's Division which leads to a substantiated finding by the Children's Division and the corresponding appeal process related to such "findings" in the state of Missouri. Missouri's measures to protect abused and neglected children are codified in Chapter 210 of Missouri's Revised Statutes. Sections 210.109 through 210.183 specifically outline Missouri's response to the reported abuse and neglect of children. The legislature acknowledges that these cases involve the balancing of multiple priorities: the safety of the child, retention of the family unit, and the due process rights of the alleged perpetrator. § 210.145.1. To harmonize these sometimes competing priorities, our legislature established a series of

---

4. As we discuss *infra,* once formal criminal charges have been filed and an indictment or information has occurred in the criminal proceeding, the same documents sought by the alleged perpetrator in a section 210.150 administrative discovery request are discoverable via formal criminal discovery pursuant to Rule 25.02. Under either scenario, formal criminal charges are or are not filed by the prosecutor, this issue typically becomes moot before an appellate court has the chance to review it.

procedures to be implemented by the Children's Division.

When an allegation of abuse or neglect is reported, the Children's Division first makes a determination as to whether they believe the hotline report merits investigation. § 210.145.3. If so, the report of abuse is forwarded to the most local branch office of the Children's Division for further review. *Id.* The staff of that office determines if an investigation of the allegation or family assessment and services are warranted. *Id.* If an investigation is determined to be warranted, the Children's Division is required to immediately contact the appropriate law enforcement authority to inform it of the allegation and request assistance with the investigation. § 210.145.4. The appropriate law enforcement agency shall then either assist the Children's Division in the investigation, or within twenty-four hours of receiving notification, explain in writing why it will not be able to assist. *Id.*

When the Children's Division investigates a report of abuse or neglect it must, within ninety days of receiving the initial report, notify the alleged perpetrator in writing of its finding. § 210.152.2. The alleged perpetrator is also informed that the finding is confidential, except as provided in section 210.150. § 210.152.2(1). The alleged perpetrator is entitled to access the investigative records. However, such individual is not entitled to the name of the person who reported the abuse nor is such individual permitted to have access to the investigative records if the Children's Division determines that doing so would endanger a person. § 210.150.2(5). Finally, the alleged perpetrator is not allowed to see the investigative records *if criminal charges are pending* and the criminal charges are based upon the facts and circumstances that are the subject of the reported abuse or neglect, until an indictment is returned or an information is filed. *Id.*

If the Children's Division has concluded by a preponderance of the evidence that there was abuse or neglect, the alleged perpetrator has sixty days to seek an administrative appeal to, and relief from, the Child Abuse and Neglect Review Board (CANRB). 13 C.S.R. 35–31.025(2)(A). To appeal from the administrative determination, the alleged perpetrator must request administrative review in writing. 13 C.S.R. 35–31.025(1). Upon such a request, the circuit manager of the local office of the Children's Division will review the finding and, within ten days, determine whether to uphold or reverse the initial finding. 13 C.S.R. 35–31.025(2)(B). If the original agency finding is upheld, the circuit manager is required to inform the alleged perpetrator in writing of the findings on circuit manager review and to forward the alleged perpetrator's request for administrative review to the CANRB. 13 C.S.R. 35–31.025(2)(C).

Within five days of receiving the notice of administrative appeal, the CANRB must notify the alleged perpetrator of the date, time, and location for the administrative review hearing. 13 C.S.R. 35–31.025(9)(A). The CANRB must keep all reports and records confidential except as permitted by section 210.150. 13 C.S.R. 35–31.025(7). If the alleged perpetrator is aggrieved by the decision of the CANRB, such individual may seek *de novo* judicial review in the circuit court of the county in which such individual resides or in Cole County. § 210.152.5. As long as the appeal is progressing, the alleged perpetrator's name will not be added to the child abuse and neglect registry. *Jamison v. Dep't of Soc. Servs., Div. of Family Servs.*, 218 S.W.3d 399, 417 (Mo. banc 2007).

*When Does § 210.150.2(5) Allow
for Release of Records to an
Alleged Perpetrator?*

■ On appeal, the Children's Division argues that the trial court erred in interpreting "pending criminal charges" as that phrase is found in section 210.150.2(5). The Children's Division argues that the legislature intended this term to include an ongoing criminal *investigation.*[5] We disagree.

■ Section 210.150.2(5) provides that an alleged perpetrator of child abuse or neglect is entitled to have access to investigative records, when certain conditions have been met:

Any alleged perpetrator named in the report, but the names of reporters shall not be furnished to persons in this category. Prior to the release of any identifying information, the division shall determine if the release of such identifying information may place a person's life or safety in danger. If the division makes the determination that a person's life or safety may be in danger, the identifying information shall not be released. However, the investigation reports will not be released to any alleged perpetrator with *pending criminal charges* arising out of the facts and circumstances named in the investigation records *until*

5. Aside from the fact that we can think of no rational scenario in which a criminal "investigation" equals a criminal "charge," there are significant collateral consequences to the Children's Division's proposed interpretation, which is, in essence: from the moment a report is passed on to the law enforcement agency and an investigation is initiated by law enforcement until the relevant prosecutorial entity decides to criminally charge the alleged perpetrator to the point of indictment or information—or close the investigation without charges—or the statute of limitations runs during the ongoing investigation, there is a "pending criminal charge" and no need to produce the agency's investigative documentation. While the alleged perpetrator's name could not be placed on the child abuse and neglect registry during this time, *Jamison,* 218 S.W.3d at 417, there are a host of other collateral consequences that exist during what could be a very extended timeline for what may be an innocently accused alleged perpetrator. For example, there is a social stigma that attaches to unresolved and potentially untrue abuse findings by the Children's Division; often, during the pendency of the administrative proceedings, there are rehabilitation requirements imposed upon the alleged perpetrator that may include what amounts to an acknowledgement of guilt; often, until the appeal process has run its course, the alleged perpetrator is not permitted to have unsupervised access to his or her children; in the current case, Pitts is not permitted to have contact with his stepdaughter and, as a result, must move out of the

family home when his wife has physical custody of his stepdaughter. While the statute of limitations will run in three years for most felonies and one year for most misdemeanors, a prosecution for any unlawful sexual offense involving a person under eighteen years of age may be commenced within twenty years of the date upon which the alleged victim turns eighteen, § 556.037, and there is no statute of limitation for murder, any class "A" felony, forcible rape, attempted forcible rape, forcible sodomy, or attempted forcible sodomy, § 556.036.1, such that it is conceivable that the timeline that the Children's Division advocates for its interpretation of "pending criminal charges" could last indefinitely. An investigation by the Children's Division that results in a finding of abuse or neglect can result in substantial limitations on an individual's right to raise one's child, adopted child, or stepchild. In many cases, those limitations are valuable protections for what turns out to be substantiated abuse allegations that result in criminal convictions. There are, however, instances where an alleged perpetrator who may be a parent has been falsely accused of abuse or neglect and that parent has "a fundamental liberty interest protected by the constitutional guarantee of due process" to raise his or her children, *In the Interest of K.A.W.,* 133 S.W.3d 1, 12 (Mo. banc 2004), and we must guard that liberty interest with the same energy that we seek to protect the children of this state from abuse and neglect.

*an indictment is returned or an information filed* [.]

(Emphasis added.) In interpreting statutes, " '[e]ach word, clause, sentence and section of a statute should be given meaning.' " *State ex rel. Womack v. Rolf*, 173 S.W.3d 634, 638 (Mo. banc 2005) (quoting *Hadlock v. Dir. of Revenue*, 860 S.W.2d 335, 337 (Mo. banc 1993)). We reject an interpretation of a statute that will cause us to ignore the language of the statute. *Id.* It is a general presumption of statutory construction that the legislature did not include superfluous language. *Norwin G. Heimos Greenhouse, Inc. v. Dir. of Revenue*, 724 S.W.2d 505, 508 (Mo. banc 1987). Furthermore, we avoid interpretations of statutes that lead to an unreasonable or absurd result. *Laclede Gas Co. v. City of St. Louis*, 363 Mo. 842, 253 S.W.2d 832, 835 (1953); *State v. Sledd*, 949 S.W.2d 643, 645 (Mo.App. W.D.1997). In this context, then, we examine what the phrase "pending criminal charges" in section 210.150.2(5) means.

The statute in question does not define "pending." The *Black's Law Dictionary* definition of "pending" is "[b]egun, but not yet completed; during; before the conclusion of; prior to the completion of; unsettled; undetermined; in process of settlement or adjustment. Thus, an action or suit is 'pending' from its inception until the rendition of final judgment." BLACK'S LAW DICTIONARY 1021 (5th ed.1979). "A suit is

deemed to be pending from the time it is commenced until its final determination, or until the entry of a final judgment." 1 AM.JUR. 2d *Actions* § 67 (2005). We conclude that "pending" means something more than a thing that has yet to happen. Instead, in a legal context, "pending" means an event that has been initiated but not yet concluded.

The question, then, before this court is when a criminal charge is initiated and therefore "pending." The Children's Division contends that within the context of the statute, the only reasonable interpretation of when a criminal *charge* is initiated is when the *investigation* is initiated by law enforcement and under review by the relevant prosecutorial entity.[6] Conversely, in its judgment, the trial court defined the phrase in question in the following manner:

> [W]hen the term regarding a pending criminal charge is read in the context of the rest of the statutory language, it is clear that the term refers to a charge which has been filed with a court, particularly in light of this statute's direction that the records be released once the charge progresses in the process to the point at which the case reaches the Circuit Court level through the bringing of an indictment or information.

In Missouri, both felony and misdemeanor criminal charges may be com-

---

**6.** The crux of the Children's Division's argument is that if you replace the phrase "pending criminal charges" with the phrase "indictment or information," then it reads: "[I]nvestigation reports will not be released to any alleged perpetrator with [an indictment returned or an information filed] arising out of the facts and circumstances named in the investigation records *until an indictment is returned or an information filed* ...." This, the Children's Division argues, is an absurd result, and hence, the legislature must have meant pending criminal "investigations"

when it said pending criminal "charges." First, this ignores the plain meaning and difference between an "investigation" and a "charge." Second, this ignores the fact that a criminal charge, as discussed in our ruling today, is a global phrase that includes criminal procedural circumstances that may or may not include a corresponding indictment or information—namely, the criminal procedural scenario when a felony charge is initiated by complaint, but has not yet proceeded to the point of indictment or information.

menced by a bill of indictment returned by a grand jury. Rules 21.01, 22.01. A bill of indictment is the province of a grand jury, § 540.240, and an indictment is returned only after deliberation by a duly convened grand jury where at least nine members of the grand jury concur on the indictment, § 540.250, and return a true bill of indictment. Pursuant to article I, section 16 of the Missouri Constitution, "no grand jury shall be convened except upon an order of a judge of a court having the power to try and determine felonies." [7]

In Missouri, the other method of initiating a misdemeanor criminal proceeding is by the filing of an information with a court of competent jurisdiction. Rules 21.01, 21.02.

■■■ The only other method to initiate a felony proceeding in Missouri is by complaint.[8] Rule 22.01. Notably, a complaint is sufficient to commence a criminal proceeding even though it is not sufficient to take the matter to trial. *Hayes v. State,* 301 S.W.3d 542, 546 (Mo.App. W.D.2009). More specifically, we have stated:

> A complaint is a pleading by which a criminal action is commenced. It is presented by a public officer upon the officer's oath of office, rather than by a grand jury on their oath. . . .
>
> While there is authority that the filing of a complaint gives the court subject matter jurisdiction of the offense charged, under a statutory provision, *a complaint*

*is a form of accusatory instrument which is sufficient to commence a criminal proceeding but is jurisdictionally insufficient to take a matter to trial.*

*Id.* (quoting 42 C.J.S. *Indictments* § 3 (1989)).

One of the cases relied upon in *Hayes v. State* is *State v. Rhodes,* 591 S.W.2d 174 (Mo.App. E.D.1979), which holds that a complaint performs the same function as an indictment or information, which is to advise the accused of the charge and enable a judge to preliminarily determine whether or not the accused should be bound over to stand trial for the offense. *Id.* at 175. Stated another way, "[t]he filing of a complaint . . . is the first step in instituting a criminal charge." *Id. See also State ex rel. Lamar v. Impey,* 365 Mo. 437, 283 S.W.2d 480, 482 (1955) ("In this State, prosecution of felonies are by indictment or information. If by information, it is necessary to commence the prosecution by a complaint in a magistrate [9] court where the defendant is given the right to have a preliminary hearing.").[10]

Thus, a felony *information* occurs *after* a *complaint* has been filed to initiate the criminal proceeding pursuant to Rules 22.01, 22.02, and 22.03 and a judge of the circuit court (typically an associate circuit judge) in the county where the offense is alleged to have been committed has determined that the facts support a finding of

---

7. Many counties do not regularly convene a grand jury and, accordingly, all felony criminal charges in those counties are ordinarily commenced by a felony complaint that eventually leads to the filing of an information before the criminal charge proceeds to trial.

8. In practice, this is the most common method of initiating a felony criminal charge.

9. Magistrate judges have since been replaced with associate circuit judges, who serve as a division of the circuit court.

10. Notably, our Missouri Supreme Court, in reaching this ruling, concluded that the filing of the criminal complaint constituted a criminal prosecution of a criminal charge that was pending from the moment the complaint was filed, and the Supreme Court found it immaterial that the complaint had not, at the time of the complained-of procedural objection, resulted in an information. *Impey,* 283 S.W.2d at 482.

probable cause such that the defendant must answer to the charge. § 544.250.[11] At that point, the felony criminal defendant is bound over for trial before a different judge of the circuit court (typically a circuit judge), § 478.240.2(2) (the presiding judge of the circuit court shall not assign a judge to hear the trial of a felony case when such judge has previously conducted the preliminary hearing in that case), and the prosecutorial entity must then file a felony information to replace the complaint to proceed to trial. Rule 23.03 ("An information charging a felony shall be filed not later than ten days after the date of the order requiring the defendant to answer to the charge.").[12]

The one constant of each "commenced" criminal proceeding, whether misdemeanor or felony, is that a court of competent jurisdiction is inextricably bound to the process of "commencing" the criminal charge—whether by indictment, information, or complaint. The other constant is that a "pending criminal charge" is a global phrase encompassing criminal charges that can procedurally exist with, and sometimes without, a simultaneous indictment or information.

Not so coincidentally, Rule 25.02 states that discovery in a criminal proceeding "may commence upon the filing of the indictment or information." Applied to the criminal proceeding commencement mechanisms discussed herein:

· If a misdemeanor or felony criminal proceeding is commenced by a bill of indictment returned by a grand jury, discovery may commence immediately.

· If a misdemeanor criminal proceeding is, instead, commenced by the filing of an information, discovery may commence immediately.

· If a felony criminal proceeding is commenced by the filing of a complaint, no discovery is required until preliminary examination has occurred or is waived and the associate circuit judge usually binds the case over for trial, at which point the complaint is replaced by an information.

Is it any coincidence that the relevant language of section 210.150.2(5) ("[T]he investigation reports will not be released to any alleged perpetrator with pending criminal charges arising out of the facts and circumstances named in the investigation records until an indictment is returned or an information filed.") patterns the discovery of investigative records substantiating abuse to such point in time that is virtually identical to the language of the criminal discovery rule found at Rule 25.02? We think not. We believe the intent of the legislature's enactment of the document discovery mechanism of section 210.150.2(5) was plainly worded to prohibit a criminal defendant from discovering documents via section 210.150.2(5) that were

---

**11.** "[A] preliminary examination shall in no case be required where same is waived by the person charged with the crime...." § 544.250.

**12.** We assume that this is the procedural scenario contemplated by the trial court's judgment below when describing the criminal charge progressing "[t]o the point at which the case reaches the Circuit Court level through the bringing of an indictment or information." As the trial court below also correctly suggested, a prosecutorial entity could file a complaint, then while the com-

plaint is pending, submit the case to the grand jury for a bill of indictment and, upon receiving the bill of indictment, the case would proceed to trial against the defendant via the bill of indictment and not the complaint (which would ultimately require an information). Irrespective, the trial court's judgment explaining its interpretation of "pending criminal charges" appears to reference the usual scenario whereby a felony criminal charge is initiated by a felony complaint.

not discoverable under Rule 25.02. Conversely, section 210.150.2(5) is not worded in such a way as to limit the scope of discovery that Rule 25.02 would otherwise authorize.

■ Furthermore, we read statutes *in pari materia* with each other. *S. Metro. Fire Prot. Dist. v. City of Lee's Summit,* 278 S.W.3d 659, 666 (Mo. banc 2009) ("In determining the intent and meaning of statutory language, the words must be considered in context and sections of the statutes *in pari materia,* as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words."). Section 210.152.3, which sets out the timetable for appealing an abuse or neglect finding by the Children's Division, states:

> Any person named in an investigation as a perpetrator who is aggrieved by a determination of abuse or neglect by the division as provided in this section may seek an administrative review by the child abuse and neglect review board pursuant to the provisions of section 210.153. Such request for review shall be made within sixty days of notification of the division's decision under this section. *In those cases where criminal charges arising out of facts of the investigation are pending, the request for review shall be made within sixty days from* ***the court's*** *final disposition or dismissal of the charges.*

(Emphasis added.)

Clearly, in this section of Chapter 210, the legislature contemplates that once a criminal "charge" is "pending," termination of the "pending criminal charge" occurs either by final disposition by "the court" or dismissal of filed charges with the court by the prosecutorial entity. Termination in this statutory section is not contemplated by a prosecutor or other law enforcement agency terminating its ***investigation*** of possible criminal ***charges*** that were never filed.[13] It is no coincidence that "the court" is inextricably bound to every scenario involving the commencement of a misdemeanor or felony criminal proceeding, and it is, likewise, no coincidence that the contested language of section 210.150.2(5) refers to "pending criminal ***charges***" and not "pending criminal ***investigations.***"

Ultimately, a criminal "charge" is just that—a criminal charge—not a criminal investigation. Had the legislature intended for the production of investigative documents to be restricted under section 210.150.2(5) when a criminal "investigation" was pending, it could have and would have said so. It did not. Consequently, we conclude that the trial court's judgment is in harmony with the plain language of the statute.

### Conclusion

■ Pursuant to section 210.150.2(5), the investigative records contemplated by that statute are accessible by an alleged perpetrator, subject to redaction as contemplated by the statute and subject to the Children's Division's determination that the release of the records will not endanger a person's life or safety, unless the alleged perpetrator has been charged with a felony by the filing of a complaint arising out of the facts and circumstances identified in the investigative records and the felony complaint has not yet resulted

---

13. We also note that, if "pending criminal charges" were to be interpreted in sections 210.150.2(5) and 210.152.3 as the Children's Division advocates (namely, to include criminal *investigations* ), it would make it difficult to determine whether a request for review was timely commenced, since the date an investigation terminates may not be easily ascertainable.

in an information after a preliminary hearing has been held or waived and the case has been bound over for trial. In all other instances—misdemeanor charged by indictment; misdemeanor charged by information; felony originally charged by indictment; a criminal *investigation* pending without criminal *charges* being filed—the alleged perpetrator is entitled to the records contemplated by section 210.150.2(5).

The judgment of the trial court is affirmed.

VICTOR C. HOWARD, Judge, and ALOK AHUJA, Judge, concur.